# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 14, 2026

Lyle W. Cayce
Clerk

———————

No. 25-60475

———————

Adebayo Ademola,

*Petitioner*,

*versus*

Todd Wallace Blanche, *U.S. Attorney General*,

*Respondent.*

———————————————

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A214 664 670

———————————————

Before Elrod, *Chief Judge*, and Clement and Oldham, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:

Adebayo Ademola petitions for review of an order by the Board of Immigration Appeals. That order deemed him inadmissible to the United States because of a prior conviction for false use of a passport. We deny the petition for review.

I

Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, a lawful permanent resident returning to the United States "may be required to seek an admission" if he falls into a list of enumerated

categories. *Munoz v. Holder*, 755 F.3d 366, 368 (5th Cir. 2014) (quotation omitted); *see* 8 U.S.C. § 1101(a)(13)(C). Relevant here, a resident alien may be required to seek admission if he has been convicted of "a crime involving moral turpitude." 8 U.S.C. §§ 1101(a)(13)(C)(v), 1182(a)(2)(A)(i)(I).

Adebayo Ademola, a Nigerian citizen, became a lawful permanent resident of the United States. Shortly thereafter, he pleaded guilty to "willfully and knowingly" using a "forged" or "counterfeit" Nigerian passport to open a bank account, in violation of 18 U.S.C. § 1543. A few years later, he was detained upon returning from an international trip. The Department of Homeland Security charged him with inadmissibility for having been convicted of a crime involving moral turpitude and initiated removal proceedings. The immigration judge sustained Ademola's charge of inadmissibility and ordered him removed to Nigeria. The Board of Immigration Appeals ("Board") affirmed.

On appeal, Ademola argues that his conviction for false use of a passport is not a crime involving moral turpitude. We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D). *See Munoz*, 755 F.3d at 369.

II

When reviewing a Board decision, we consider questions of law *de novo* and we review findings of fact for substantial evidence. *Calderon-Uresti v. Bondi*, 158 F.4th 663, 668 (5th Cir. 2025). Whether a particular offense qualifies as a crime involving moral turpitude is a question of law subject to *de novo* review. *Diaz Esparza v. Garland*, 23 F.4th 563, 567 (5th Cir. 2022).

Here, we first (A) define "crime involving moral turpitude." Then we (B) consider whether Ademola's crime is a categorical match.

A

Previously, we have deferred to the Board's interpretation of the phrase "crime involving moral turpitude." *See ibid.* Under that regime, we would have denied Ademola's petition, just as we denied other petitions involving similar offenses that we deemed "crimes involving moral turpitude." *See, e.g.*, *Munoz-Rivera v. Wilkinson*, 986 F.3d 587, 591 (5th Cir. 2021) (denying petition involving a conviction for unauthorized use of a social security number). We no longer defer to the Board's interpretation. After the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), we must "independently" assess the meaning of statutory provisions. *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 120 F.4th 163, 171 (5th Cir. 2024) (quotation omitted); *see also Solis-Flores v. Bondi*, 159 F.4th 205, 208–09 (4th Cir. 2025) (doing so with respect to the meaning of "crime involving moral turpitude").

At minimum, "crime[s] in which fraud is an ingredient" constitute "crime[s] involving moral turpitude." *Jordan v. De George*, 341 U.S. 223, 227–29 (1951); *see also Omagah v. Ashcroft*, 288 F.3d 254, 260 (5th Cir. 2002) ("[T]he courts of appeals have interpreted 'moral turpitude' as including a wide variety of crimes that involve some fraud or deceit.").

B

With this definition in mind, it is clear that false use of a passport under 18 U.S.C. § 1543 is a crime involving moral turpitude.

To determine whether a particular offense is a crime involving moral turpitude, precedent requires us to use the categorical approach—that is, we "focus[] on the inherent nature of the crime, as defined in the statute . . . , rather than the circumstances surrounding the particular transgression." *Amouzadeh v. Winfrey*, 467 F.3d 451, 455 (5th Cir. 2006) (quotation omitted). So even though all agree that Ademola himself committed fraud, that is

unfortunately "beside the point." *Pereida v. Wilkinson*, 592 U.S. 224, 234 (2021). This court's role is to determine the "minimum criminal conduct necessary to sustain a conviction under the statute." *Amouzadeh*, 467 F.3d at 455 (quotation omitted). If a person "hypothetically" could "violate the . . . statute without committing fraud, the statute does not qualify as a crime involving moral turpitude." *Pereida*, 592 U.S. at 234.

Section 1543 criminalizes two types of conduct "relating to" the creation or use of false, forged, or altered passports. *Yong Wong Park v. Att'y Gen.*, 472 F.3d 66, 72 (3d Cir. 2006). Ademola was convicted under the second subsection: "willfully and knowingly us[ing], or attempt[ing] to use, or furnish[ing] to another for use any such false, forged, counterfeited, mutilated, or altered passport or instrument purporting to be a passport, or any passport validly issued which has become void by the occurrence of any condition therein prescribed invalidating the same." 18 U.S.C. § 1543.

This court has broken the statute down into three elements: the defendant must "(1) willfully and knowingly, (2) use[] or attempt[] to use, (3) an instrument purporting to be a passport." *United States v. Masha*, 990 F.3d 436, 444 (5th Cir. 2021).

These elements involve conduct that is inherently fraudulent or deceitful. Obviously, if the user knowingly hands over a "false, forged, counterfeited, mutilated, or altered passport or instrument purporting to be a passport," that conduct is fraudulent. 18 U.S.C. § 1543. The person is "willfully and knowingly" using a document that is not what it purports to be. *Masha*, 990 F.3d at 444.

The tougher question is whether it is a crime involving moral turpitude to use a "passport validly issued which has become void by the occurrence of any condition therein prescribed invalidating the same." 18 U.S.C. § 1543. It is. Consider, for example, a person carrying a once-valid but

now-invalidated passport. In this scenario, the turpitudinous conduct lies in the nature of the document. A passport "remains at all times the property of the United States" or other issuing sovereign. *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 81 (2015) (SCALIA, J., dissenting) (quotation omitted); *see also* 22 C.F.R. § 51.7(a) (same). It is essentially "a letter of introduction in which the issuing sovereign vouches for the bearer." *Haig v. Agee*, 453 U.S. 280, 292 (1981). So when a person willfully and knowingly uses or attempts to use a passport that has become invalid, he is misusing the sovereign's property and falsifying his Government-provided "introduction." The Government provided the passport upon conditions X, Y, and Z; one or more of those conditions is no longer present; and yet, the person continues to use Government property in circumstances where the Government has made clear that he can no longer use its property. That conduct willfully and knowingly deceives the Government that issued the passport—and the entity that receives it. *See Solis-Flores*, 159 F.4th at 210–11 (emphasizing the role of knowledge in turpitudinous conduct). Knowing use of an invalid passport is therefore categorically a crime involving moral turpitude.

The petition for review is DENIED.